UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN H. KNOPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 2330 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| WELLS FARGO BANK, N.A., as Trustee, in ) | |
| trust for the registered holders of Park Place ) | |
| Securities, Inc., Asset-Backed Pass-Through ) | |
| Certificates, Series 2005-WCW1, BANK OF ) | |
| AMERICA, N.A., SELECT PORTFOLIO ) | |
| SERVICING, INC., CORELOGIC ) | |
| SOLUTIONS, LLC, MORTGAGE ) | |
| ELECTRONIC REGISTRATION SYSTEMS, ) | |
| INC., MERSCORP HOLDINGS, INC., ) | |
| VILLAGE OF ALSIP, LAW OFFICES OF ) | |
| IRA T NEVEL, PIERCE AND ASSOCIATES, ) | |
| P.C., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Facing the foreclosure of his property in state court, Plaintiff Justin H. Knopp turned to federal court and filed this action disputing the title and ownership of the property and the actions taken by certain parties in servicing his loan. In this action, Knopp, proceeding *pro se*, has sued several parties he claims had some involvement with the underlying mortgage and note at issue in the state foreclosure proceedings: Wells Fargo Bank, N.A., as Trustee for the certificate holders of Park Place Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-WCW1 (the "Trust"); Bank of America, N.A. ("BANA"); Select Portfolio Servicing, Inc. ("SPS"); CoreLogic Solutions, LLC ("CoreLogic"); Mortgage Electronic Registration Systems,

Inc. and Merscorp Holdings, Inc. (collectively, "MERS")[1]; the Village of Alsip (the "Village"); the Law Offices of Ira T. Nevel ("Nevel"); and Pierce and Associates, P.C. ("Pierce"). On January 30, 2017, the Court dismissed Knopp's complaint, giving him leave to replead certain claims. *See* Doc. 97. After Knopp filed his first amended complaint, all Defendants but Nevel filed motions to dismiss.[2] Because Knopp has again failed to state a viable claim against any Defendant, the Court grants the motions to dismiss and dismisses Knopp's first amended complaint with prejudice and terminates the case.

## BACKGROUND[3]

On or about March 25, 2005, Knopp took out a loan with Argent Mortgage Company, LLC ("Argent"), secured by property at 12237 S. Avers Avenue, Alsip, Illinois. According to

---

[1] In the first amended complaint, Knopp sues both Mortgage Electronic Registration Systems, Inc. and Merscorp Holdings, Inc., treating them as one entity. Mortgage Electronic Registration Systems, Inc. responds, apparently unaware of the changes Knopp has made in naming the Defendants in the first amended complaint and again indicates that it and not MERS/MERSCORP is the appropriate Defendant without commenting on the propriety of Merscorp Holdings, Inc. as a Defendant in the suit. For purposes of the pending motions, the Court treats the two named parties as one.

[2] Although counsel for Nevel filed an appearance in this case, no answer or motion to dismiss has been filed on its behalf.

[3] The facts in the background section are taken from Knopp's first amended complaint and the exhibits incorporated therein and are presumed true for the purpose of resolving the pending motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court also takes judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute" from the state court proceedings without converting the motion to dismiss to a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012). Finally, where an exhibit contradicts allegations in the complaint, the exhibit controls over the conflicting allegations. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).
  Knopp's first amended complaint supersedes his original complaint, rendering that original pleading void. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013). This means the first amended complaint stands on its own and the Court cannot consider facts from Knopp's earlier complaint in addressing the motions to dismiss the amended complaint. *Id.* But Knopp has not included relevant factual allegations in his first amended complaint and only seeks to incorporate previously attached exhibits by reference. *See, e.g.*, Doc. 101 ¶¶ 1, 54. Given Knopp's *pro se* status and the need to provide context before addressing the motions to dismiss pending in this case, the Court recites those relevant facts that can be gleaned from Knopp's prior pleadings and exhibits as background before taking only those facts included in the first amended complaint into account in its analysis.

Knopp, Argent ceased doing business in 2007.  On October 3, 2011, Argent assigned the mortgage to the Trust.  The Cook County Recorder of Deeds recorded the assignment of the mortgage on October 21, 2011.  CoreLogic prepared and filed this assignment of mortgage.  BANA serviced the mortgage until August 16, 2012, at which point SPS took over the servicing of the mortgage.  Knopp received notice of the change of servicer in a letter sent on August 7, 2012.

Knopp defaulted on the loan in 2009, failing to make the required payments.  In December 2009, the Trust, BANA, and SPS, through the Village and the Alsip Police Department, told Knopp he would be charged with criminal trespass to property if he did not leave the property.  On December 23, 2011, the Trust, using Nevel as counsel, filed a foreclosure action to enforce its security interest in the property.  A new assignment of mortgage, prepared by Nevel, was signed on January 10, 2012 and filed with the Cook County Recorder of Deeds on January 26, 2012.  The Trust voluntarily dismissed the 2011 foreclosure case on January 2, 2014.

Knopp received correspondence from Pierce in June 2014 indicating that SPS had hired it to initiate a second foreclosure proceeding and setting forth certain information as required by the Fair Debt Collection Practices Act ("FDCPA").  In response, in July 2014, Knopp sent a letter to Pierce and SPS requesting documentation of his indebtedness.  In that letter, he indicated that he had informed both Pierce and SPS that they are not the legal servicers of the mortgage in January 2014.  Pierce responded that SPS would provide the required documents, and SPS sent Knopp numerous letters in October and November 2014.  Knopp contacted the Illinois Attorney General's Office of Consumer Fraud in February 2015, complaining about the foreclosure procedures in his case.

In March 2015, the Trust initiated the second foreclosure action against Knopp. Knopp then acquired documentation from the two foreclosure cases in August 2015, observing that the documents used in the two cases were different. The second foreclosure action remains pending.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

As with his initial complaint, Knopp's second attempt at pleading viable claims does little to help the Court decipher the claims he seeks to bring against Defendants and the factual bases underlying them, particularly where, as noted above, he fails to include the relevant background facts to support his legal theories. *See Scott*, 725 F.3d at 782–83 ("[W]hen a plaintiff files an amended complaint, the amended complaint supersedes the original complaint. . . . [F]acts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss."). In the first amended complaint, however, Knopp does

4

narrow his claims to ones for fraud, and violations of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605(e), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), the False Claims Act ("FCA"), 31 U.S.C. § 3729, and 42 U.S.C. §§ 1985 and 1986.

Before addressing the merits of these claims, the Court must address Knopp's objections to the timeliness of all but BANA's motions to dismiss. Only BANA filed its motion to dismiss within the time limits provided by the Federal Rules of Civil Procedure, with the remaining moving Defendants filing their motions in the following days and weeks and seeking leave to file those motions *instanter*. SPS, the Trust, and MERS maintain they filed late due to a calendering error, calculating the due date from the date Knopp's complaint was electronically docketed instead of file-stamped. The Court allowed Knopp ample opportunity to respond to all the arguments raised by the moving Defendants and Knopp cannot show any prejudice for the untimely filing of the motion to dismiss. Therefore, instead of resolving the issue on a procedural technicality, the Court finds it appropriate to extend the time for filing the motions to dismiss for each of the late-filing Defendants given the stage of the proceedings, the fact that in some cases the reason for the filing was a calendaring mistake, and the fact that Knopp has suffered no prejudice from the late filings. *See Crue v. Aiken*, 370 F.3d 668, 680–81 (7th Cir. 2004) (in deciding whether to allow for enlargement of time after expiration of specified period, court should consider "whether there will be prejudice to the opposing party, the effect on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith").

Additionally, as it did in addressing Knopp's initial complaint, to the extent only certain Defendants raise arguments that apply equally to all Defendants, the Court extends them to all because Knopp had the opportunity to respond to all arguments. *See Malak v. Associated*

5

*Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendant Mortg. Corp.*, No. 1:11-CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although three defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by other defendant to all of them and dismiss claims against all defendants). Although Knopp may have a defense to the foreclosure action proceeding in state court, the proper place to raise any arguments against foreclosure is in the state court action, not in this federal court action where he has attempted to bring in as a Defendant every possible player involved with his mortgage. Here, none of his claims or speculation concerning the propriety of the securitization and assignment of his mortgage can proceed, as set forth in detail below.[4]

## I. RESPA

Abandoning his previously-pleaded claim under the FDCPA and instead pursuing a claim under RESPA in an apparent attempt to take advantage of RESPA's longer statute of limitations,[5] Knopp contends that SPS violated § 2605(e) in failing to properly respond to a letter Knopp sent SPS on July 18, 2014. In that letter, Knopp requested "complete forensic evidence and legal documentation associated with every transaction relating to this loan since it's [sic] inception." Doc. 101 ¶ 4; *see also* Doc. 1-6 at 3. Section 2605(e) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . .

---

[4] Because the Court finds that Knopp's first amended complaint fails to state a claim, the Court again does not address the arguments made by certain Defendants that the Court should stay this case pursuant to the *Colorado River* doctrine in light of the foreclosure action pending in state court.

[5] Claims for violations of § 2605 of RESPA must be brought within three years of the violation. *See* 12 U.S.C. § 2614. Here, Knopp alleges he wrote to SPS requesting information on July 18, 2014, which would make his RESPA claim timely.

for any information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days." 12 U.S.C. § 2605(e)(1)(A). A servicer must also take additional action after receipt of a qualified written request ("QWR") based on the nature of the request. *See* 12 U.S.C. § 2605(e)(2). To qualify as a QWR, "written correspondence must reasonably identify the borrower and account and must 'include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) (quoting 12 U.S.C. § 2605(e)(1)(B)). Here, Knopp's letter does not qualify as a QWR to which SPS needed to respond pursuant to § 2605(e) because it related to matters of loan origination and not loan servicing. *See Arriaga v. Wells Fargo Bank, N.A.*, No. 09 CV 2115, 2013 WL 1303831, at *4 (N.D. Ill. Mar. 27, 2013) (information requested in letter must relate to "servicing of the borrower's loan account" and not to "origination of the loan" in order to qualify as QWR under RESPA). Although Knopp did identify himself as the borrower and provided his loan account number, he requested information concerning ownership of the loan and its validity, accusing SPS of various criminal violations in the process. *See* Doc. 1-6. Such requests for information do not constitute requests for "information related to the servicing of" Knopp's loan requiring a response pursuant to § 2605(e). *See Todd v. Shorebank*, No. 12 CV 6575, 2013 WL 3790966, at *4–5 (N.D. Ill. July 19, 2013); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000). Therefore, because Knopp did not send SPS a valid QWR so as to trigger SPS's duties under § 2605(e), the Court dismisses Knopp's RESPA claim.[6]

---

[6] Knopp also sent the July 18, 2014 letter to Pierce, but Knopp does not mention Pierce in the first amended complaint in connection with his RESPA allegations. To the extent Knopp intended to name Pierce as a Defendant with respect to this claim, the same arguments counseling dismissal apply and the Court dismisses the claim against Pierce as well.

**II.     Fraud**

Knopp generally alleges that Defendants committed fraud in using false documents in their attempts to foreclose on his property. To state a claim for fraud, Knopp must allege that (1) Defendants made a false statement or omission of material fact, (2) Defendants knew of or believed in its falsity, (3) Defendants intended to induce Knopp to act, (4) Knopp acted in reliance on the truth of Defendants' statement, and (5) damages resulted from Knopp's reliance. *Weidner v. Karlin*, 932 N.E.2d 602, 605, 402 Ill. App. 3d 1084, 342 Ill. Dec. 475 (2010). Additionally, to the extent Knopp claims fraudulent concealment, he must allege that the Defendant at issue had a duty to disclose the omitted fact to him. *Id.*; *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013). A heightened pleading standard applies to fraud claims: "Fed. R. Civ. P. 9(b) requires the plaintiff to state 'with particularity' any 'circumstances constituting fraud.' Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Knopp's fraud claim again fails to meet Rule 9(b)'s heightened pleading standard. Although in this iteration of his complaint he sets forth the elements of a fraud claim, he generally avers that all Defendants falsely claim ownership in his mortgage based on documents failing to support that claim without identifying those documents or making clear the basis for the allegation. While the underlying facts may be found in his initial complaint, because the first amended complaint stands on its own and those facts are not incorporated into the first amended complaint, the Court cannot consider them here. *See Scott*, 725 F.3d at 782–83. And again, although he has added some specific allegations tied to certain Defendants, Knopp fails to clearly separate out the involvement of each Defendant, lumping the majority together and claiming that

8

they all committed fraud. Knopp cannot engage in such group pleading because a fraud claim must detail each Defendant's role in the alleged fraud. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("[I]n a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." (internal quotation marks omitted) (citation omitted)). Thus, the Court finds Knopp's fraud claim again fails to meet the required Rule 9(b) pleading standards and requires dismissal.[7]

## III. Civil RICO

Knopp again attempts to plead that the filing of the foreclosure actions violates the civil RICO statute but fares no better than before for the same reasons discussed in the Court's prior Opinion. The civil RICO statute has a limited reach, with it "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). Under 18 U.S.C. § 1962(c), Knopp must allege the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

First, Knopp again has not adequately identified the enterprise, i.e. a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise must have "some type of organizational structure" that is "ongoing . . . associated through time, joined in purpose, and organized in a manner amenable to hierarchial [sic] or consensual decision making." *Stachon v. United Consumers Club*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). Knopp lumps together the majority of Defendants in claiming that they have participated in ongoing criminal activity. But

---

[7] BANA also argues that Knopp does not have standing to challenge the validity of the assignment of his mortgage and so any claim based on alleged fraud related to the assignment of his mortgage must be dismissed. The Court does not address this argument here, having found that Knopp's fraud claim fails on pleading grounds. This issue may be better addressed in connection with any defenses Knopp raises to the state foreclosure proceeding.

he does not identify with any specificity their roles in any alleged organization or, particularly, how the organization has any distinct existence, instead claiming they played interchangeable roles. *See id.* at 676 (finding vague allegations of participants "lacking any distinct existence and structure" not sufficient to allege an enterprise, noting that "RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does"); *Lockhart v. HSBC Fin. Corp.*, No. 13 C 9323, 2014 WL 3811002, at *6 (N.D. Ill. Aug. 1, 2014) (plaintiff did not identify defendants' roles in organization with appropriate specificity). Knopp does add allegations for how the Village, Nevel, Pierce, and CoreLogic were drawn into working with the other Defendants, but these added allegations do not sufficiently make up for his flawed enterprise allegations.

Next, to show a pattern of racketeering activity, Knopp must allege that a defendant committed at least two predicate acts that are "related to one another" and "pose a threat of continued criminal activity." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 659 (7th Cir. 2015). Knopp includes a list of statutes he claims Defendants violated but he provides no underlying basis from which the Court can determine whether he has adequately alleged violations of these statutes. To the extent he attempts to establish predicate acts based on allegedly false statements made in the foreclosure complaints and supporting documents, the Court again reiterates that he cannot do so. *Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) (finding that plaintiffs failed to plead defendants committed predicate acts of mail or wire fraud where they based these acts on false statements allegedly contained in foreclosure complaints and underlying documents).

Additionally, as the Court previously found, Knopp's RICO claim fails because the sole scheme he conceivably pleads targeted only him. But "a single fraudulent scheme with only one

injury to one victim [is] not a 'pattern of racketeering activity' under § 1962(c)." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001); *Lipin Enters., Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986) (in order to establish a pattern of racketeering activity, "there must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim"). Although Knopp includes brief references in his first amended complaint to federal agency findings concerning certain Defendants' mortgage and foreclosure practices, the Court cannot conclude from these allegations that Defendants engaged in a pattern of racketeering activity. Instead, the Court is left only with the allegedly improper attempt to foreclose on his mortgage, which does not suffice to establish a civil RICO claim. *See Lockhart*, 2014 WL 3811002, at *8 (allegations that conduct affects "thousands of other homeowners" not sufficient to demonstrate that defendants engaged in various schemes); *Drobny*, 929 F. Supp. 2d at 849 (references to "thousands of foreclosures" insufficient to establish a pattern of racketeering activity). The Court thus dismisses Knopp's civil RICO claim.

## IV.   FCA

The Court previously dismissed Knopp's FCA claim with prejudice, concluding that he could not bring an FCA claim on the government's behalf proceeding *pro se* and that, even if he retained an attorney, the Court could not discern a valid basis for an FCA claim. *See* Doc. 97 at 12–13. Despite this, Knopp includes a "relief request" under the FCA in his first amended complaint, claiming that he seeks not to pursue a claim under the FCA but only to receive a share of the settlement agreement entered into by the Justice Department, Department of Housing and Urban Development, numerous state attorneys general, and certain mortgage servicers in 2012. But the Court cannot help Knopp obtain payment under the settlement; to the extent Knopp may have been eligible for payment, he had to follow the Court-ordered process for submitting a

11

claim.[8] The Court therefore dismisses Knopp's request for relief under the FCA and warns Knopp that he cannot reassert claims or "relief requests" to the extent such claims or requests for relief have been dismissed with prejudice.

## V.     42 U.S.C. §§ 1985 and 1986

Finally, Knopp also claims that Defendants violated § 1985 and that Pierce also violated § 1986 by using false documents in the foreclosure proceedings to deprive him of his property. Knopp appears to pursue a claim under both § 1985(2) and § 1985(3). Section 1985(2) prohibits conspiracies to obstruct justice in state court. *See Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). In order to state a claim for civil conspiracy under § 1985(3), Knopp must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Additionally, Knopp must allege "some racial, or otherwise class-based invidiously discriminatory animus behind the conspirators' actions and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.*; *Wright*, 40 F.3d at 1507 (requiring class-based animus for § 1985(2) claim concerning denial of access to state courts). Section 1986 creates liability for individuals with knowledge of a conspiracy who fail to intervene to prevent the violation of the plaintiff's rights but had the power to do so. 42 U.S.C. § 1986. In order to find a violation of § 1986, the Court must first find a violation of § 1985. *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986.").

---

[8] According to the website Knopp references in his first amended complaint, the deadline to submit a claim form passed as of June 1, 2016 and claims are no longer being accepted. *See* http://www.nationalmortgagesettlement.com/national-mortgage-settlement.

Here, although Knopp claims to be part of a "'protected' class of borrowers," Doc. 101 ¶ 50, he has again failed to allege that any of the Defendants displayed discriminatory animus toward him based on his status as a member of such a protected class. *See Rynearson v. First Nat'l Bank of Rochester*, 602 F. Supp. 1253, 1258 (N.D. Ind. 1985) (section 1985(3) does not cover conspiracies motivated by "bias toward plaintiff and others because of their economic views," for example, being a borrower discriminated against by a lender). Thus, both Knopp's § 1985 and § 1986 claims fail. *Williams v. Deutsche Bank Nat'l Tr. Co.*, No. 15-cv-9230, 2016 WL 3538951, at *2–3 (N.D. Ill. June 28, 2016) (dismissing plaintiff's §§ 1985 and 1986 claims arising from foreclosure process where he did not adequately allege discriminatory animus or that defendants conspired to deprive him of equal protection under the law).

## VI. Dismissal With Prejudice

Given the fact that the Court previously allowed Knopp the opportunity to cure the deficiencies identified in its prior Opinion and he failed to do so, the Court dismisses Knopp's first amended complaint with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the Court grants BANA's motion to dismiss [106], SPS, the Trust, and MERS' motion to dismiss [114], Pierce's motion to dismiss [116], CoreLogic's motion to dismiss [140], and the Village's motion to dismiss [143]. The Court denies Knopp's motion to strike Pierce's motion to dismiss and memorandum of law [121] and motion to strike SPS, the Trust, and MERS' motion to dismiss [123]. The Court dismisses Knopp's first amended complaint with prejudice and terminates this case.

Dated: July 25, 2017

SARA L. ELLIS
United States District Judge